## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------  )
                                                   )
THE NECESSITY RETAIL REIT, INC.,                   )
                                                   )
                Plaintiff,                         )         No. 1:22-CV-10703-JPO
                                                   )
        v.                                         )
                                                   )
BLACKWELLS CAPITAL LLC,                            )
BLACKWELLS ONSHORE I LLC, JASON                    )
AINTABI, RELATED FUND                              )
MANAGEMENT LLC, JIM LOZIER, and                    )
RICHARD O'TOOLE,                                   )
                                                   )
                Defendants.                        )
-------------------------------------------------  )
```

## ANSWER AND COUNTERCLAIMS OF  DEFENDANTS BLACKWELLS CAPITAL LLC, BLACKWELLS ONSHORE I LLC, AND JASON AINTABI

Defendants Blackwells Capital LLC ("Blackwells Capital"), Blackwells Onshore I LLC ("Blackwells Onshore"), and Jason Aintabi (collectively, the "Blackwells Parties"), hereby answer Plaintiff's Complaint dated December 19, 2022 (the "Complaint"), and assert their affirmative defenses and counterclaims, as follows:

## GENERAL DENIAL

To the extent a response is required, the Blackwells Parties deny all allegations contained in the preamble to the Complaint.

The Blackwells Parties make no admission as to the accuracy or validity of the Plaintiff's headings, and, where the Blackwells Parties repeat those headings, it is only for the convenience of the Court and not an admission of any allegation in the Complaint.

With respect to the allegations in specific paragraphs of the Complaint, the Blackwells Parties, by and through their undersigned attorneys, respond as follows:

## SPECIFIC RESPONSES

### PARTIES

1.      Admit that The Necessity Retail REIT, Inc. ("RTL") is the Plaintiff, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1.

2.      Admitted, except to deny that Blackwells Capital is a New York limited liability company.

3.      Admitted, except to deny that Blackwells Onshore is a New York limited liability company.

4.      Denied, except to admit that Mr. Aintabi is the direct owner, president and secretary of Blackwells Onshore, and the managing member of Blackwells Capital LLC, and beneficially owned 100 shares of RTL as of October 25, 2022.

5.      The Blackwells Parties respectfully refer to the referenced documents for a true and accurate recitation of their contents, and otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5.

6.      Admit that Blackwells Onshore nominated Mr. O'Toole to serve as a director of RTL, and upon information and belief admit the remainder of the allegations in Paragraph 6, except to reject any negative implication of the use of the word "putative."

7.      Admit that Blackwells Onshore nominated Mr. Lozier to serve as a director of RTL, and reject any negative implication of the use of the word "putative."

### JURISDICTION AND VENUE

8.      This paragraph sets forth legal conclusions and questions of law to which no response is required.  To the extent a response is required, denied.

9.      This paragraph sets forth legal conclusions and questions of law to which no response is required.  To the extent a response is required, denied.

## FACTUAL BACKGROUND

10.      Admit that on or about October 24, 2022, a letter was sent to RTL regarding the nomination of Messrs. O'Toole and Lozier as directors and certain stockholder proposals, and refer to the referenced letter for a true and accurate description of its contents.  Otherwise denied.

11.      The Blackwells Parties respectfully refer to a complete copy of the referenced press release for a true and accurate recitation of its contents.

12.      The Blackwells Parties respectfully refer to a complete copy of the referenced press release for a true and accurate recitation of its contents.

13.      The Blackwells Parties respectfully refer to a complete copy of the referenced press release for a true and accurate recitation of its contents.

14.      Admit that the referenced document was filed with the SEC, and respectfully refer to a complete copy of the full document for a true and accurate recitation of its contents.

15.      The Blackwells Parties respectfully refer to a complete copy of the referenced document for a true and accurate recitation of its contents.

16.      Denied, except to admit that Mr. Aintabi met with certain representatives of separately-suing plaintiff Global Net Lease, Inc. ("GNL") on November 7, 2022, where Mr. Aintabi referred to the participation of Related in a potential proxy solicitation process and discussed potential opportunities to create value at GNL, including by opening a public bidding process to replace GNL's external managers and advisors with more cost effective ones, or by bringing GNL's external agreements in line with market standards by reducing fees and termination costs.  The Blackwells Parties further respond that, at the conclusion of the meeting, GNL's representatives

stated that they would discuss these matters with the GNL's full board of directors, and respond to Mr. Aintabi after the Thanksgiving holidays.  The Blackwells Parties specifically deny the existence of any joint venture, agreement, arrangement or understanding to force RTL to enter into a new external advisory agreement with Related or its affiliates, or to effectuate any corporate or governance changes at RTL that have not been fully disclosed in the proxy solicitation materials that were filed by the Blackwells Parties and Related as co-participants.  The Blackwells Parties further respond that they have a broader relationship that includes efforts to seek out investment opportunities in the real estate sector such as the one identified at GNL, and are currently engaged in discussions regarding multiple opportunities unrelated to RTL or GNL.

17.     Denied.

18.     Denied.

19.     The Blackwells Parties respectfully refer to a complete copy of the referenced documents for a true and accurate recitation of their contents.  Otherwise denied.

20.     Denied, and respectfully refer to a complete copy of the referenced document for a true and accurate recitation of its contents.

21.     The Blackwells Parties respectfully refer to a complete copy of the referenced documents for a true and accurate description of their contents.  Otherwise denied.

## CLAIMS FOR RELIEF

22.     The Blackwells Parties incorporate herein each of the responses above, and further deny the allegations in paragraph 22 of the Complaint.

23.     This paragraph sets forth legal conclusions as to which no response is required.  To the extent a response is required, the Blackwells Parties respectfully refer to a complete copy of the referenced statute for a true and accurate recitation of its contents.

24.     This paragraph sets forth legal conclusions as to which no response is required.  To the extent a response is required, the Blackwells Parties respectfully refer to a complete copy of the referenced rule for a true and accurate recitation of its contents.

25.     This paragraph sets forth legal conclusions as to which no response is required.

26.     This paragraph sets forth legal conclusions as to which no response is required.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

## **PRAYER FOR RELIEF**

The Blackwells Parties deny that Plaintiff is entitled to any relief requested in the Prayer for Relief or anywhere else in the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Plaintiff's claims are barred by the equitable doctrines of unclean hands and bad faith. Plaintiff has asserted the claim brought in this Complaint in an unlawful effort to entrench members of its existing board of directors.

### SECOND DEFENSE

Plaintiff's claims are barred by the doctrines of estoppel, laches, and waiver.  Plaintiff waited for an unreasonable period of time before seeking judicial intervention regarding the issues raised in its Complaint.

### RESERVATION OF ADDITIONAL AFFIRMATIVE DEFENSES

The Blackwells Parties reserve the right to assert additional affirmative defenses, and to amend, modify, or supplement these affirmative defenses.

## COUNTERCLAIMS

For their counterclaims against RTL, Blackwells Onshore and Jason Aintabi allege as follows:

## NATURE OF THE ACTION

1.      Blackwells Onshore and Jason Aintabi assert these counterclaims to enforce their rights as shareholders in plaintiff The Necessity Retail REIT, Inc. ("RTL"), which, along with its affiliate Global Net Lease, Inc. ("GNL" and, together with GNL, the "Companies"), has taken improper steps to entrench the control of the current boards of directors of the Companies.  In particular, GNL and RTL have attempted to abridge the Blackwells Parties' rights by rejecting the nomination of eminently qualified board candidates at the Companies' upcoming annual stockholder meetings (the "2023 Annual Meetings").

2.      Blackwells Onshore and Jason Aintabi therefore bring these counterclaims for declaratory and injunctive relief against RTL to (i) enforce their nomination and/or voting rights as shareholders, (ii) remedy RTL's impermissible breach of its bylaws, which would prevent lawful and proper director nominations, and (iii) prohibit further interference by RTL with its shareholders' nomination and voting rights

3.      The events leading to this Complaint were set in motion when, on October 24, 2022, Blackwells Onshore provided timely advance written notice of its intent to nominate two directors for election to the Companies' respective Boards, and to make six business proposals at the 2023 Annual Meeting of each Company (the "Nomination Notices").

4.      On December 2, 2022, both Companies rejected all of the nominees and proposals. In so doing, the Companies raised meritless arguments based on a misreading of a recent amendment to the Companies' bylaws, and on spurious claims that the Nomination Notices failed

to follow certain notice procedures.

5.      Blackwells Onshore responded in writing to the Companies on December 9, 2022, pointing out the multiple dispositive errors in the Companies' purported reasons for rejecting the Nomination Notices, and demanding that the Companies accept the nominations.  The Companies never responded to that letter.

6.      Blackwells Onshore filed suit against GNL and RTL in Maryland state court on December 19, 2022, where the case is pending under the caption, Blackwells Onshore I LLC vs Global Net Lease, Inc., et al, case number 24C22005195 (Circuit Court for Baltimore City).  Later that same day, GNL and RTL each filed separate lawsuits against Blackwells Onshore and the remaining named defendants in the instant action, in an improper and misguided effort to frustrate the pursuit of Blackwells Onshore's claims in Maryland state court.

7.      To date, no substantive proceedings have taken place in the Maryland action.  GNL and RTL have not yet responded to the complaint filed in that case.  In the interest of consolidating all claims between the parties relating to the validity of Blackwells Onshore's board nominations, Blackwells Onshore and Jason Aintabi bring these counterclaims in this Court, where they can be litigated alongside the related claims brought here by GNL and RTL against the Blackwells Parties and their co-defendants.

8.      Absent timely declaratory and injunctive relief sufficiently in advance of the 2023 Annual Meeting, the Blackwells Parties and other stockholders will be unable to nominate and elect directors to fill upcoming vacancies on RTL's Board, thereby interfering with the fundamental rights of stockholders to elect directors.

## JURISDICTION AND VENUE

9.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1367 because these counterclaims are so related to the Plaintiff's claims that they form part of the same case or controversy.

10.     RTL's bylaws contain a forum selection clause, which states:

Unless the Corporation consents in writing to the selection of an alternative forum, the Circuit Court for Baltimore City, Maryland, or, if that Court does not have jurisdiction, the United States District Court for the District of Maryland, Northern Division , shall be the sole and exclusive forum for (a) any derivative action or proceeding brought on behalf of the Corporation, other than actions arising under federal securities laws, (b) any Internal Corporate Claim, as such term is defined in the MGCL, or any successor provision thereof, including, without limitation, (i) any action asserting a claim of breach of any duty owed by any director or officer or other employee of the Corporation to the Corporation or to the stockholders of the Corporation or (ii) any action asserting a claim against the Corporation or any director or officer or other employee of the Corporation arising pursuant to any provision of the MGCL, the Charter or these Bylaws, or (c) any other action asserting a claim against the Corporation or any director or officer or other employee of the Corporation that is governed by the internal affairs doctrine. None of the foregoing actions, claims or proceedings may be brought in any court sitting outside the State of Maryland unless the Corporation consents in writing to such court.

11.     Blackwells Onshore thus filed claims against GNL and RTL to enforce its rights as a shareholder in the Circuit Court for Baltimore City, Maryland on December 19, 2022.

12.     However, RTL filed its related claims in this Court—claims based on the same underlying questions of fact as the state law counterclaims asserted by Blackwells Onshore and Jason Aintabi.  In so doing, RTL has effectively waived any forum selection requirement and consented to the litigation of the nomination dispute in this Court, including related counterclaims.

13.     Moreover, application of the relevant forum selection clause in these circumstances would be unreasonable in light of the patent gamesmanship by RTL and the risk of duplicative litigation which could lead to inefficiency and inconsistent results.  Because RTL has now put at issue in this Court the question of the propriety of Blackwells Onshore's nominations, it would be

a waste of judicial resources for litigation to proceed in two separate courts (or more, when potential appeals are considered).  There is no need for two separate judiciaries to review the full factual sweep of this dispute and reach potentially conflicting results.

14.     Therefore the Blackwells Parties have brought these claims in this Court, which is an appropriate venue in which to litigate, in light of the fact that these matters are highly time-sensitive, within this Court's supplemental jurisdiction, and should not be addressed in piecemeal fashion.

## THE PARTIES

15.     Counterclaim plaintiff Blackwells Onshore I LLC is a Delaware limited liability company with its business address in New York, New York.  It is a shareholder in RTL.

16.     Counterclaim plaintiff Jason Aintabi is a resident of Florida.  He is a shareholder in RTL.

17.     Counterclaim defendant Global Net Lease, Inc. is a Maryland corporation with its principal place of business in New York, New York.

## FACTS

### GNL and RTL Are Both Afflicted With Severe Deficiencies in Governance and Management

18.     Both Plaintiff RTL and separately-suing plaintiff GNL are managed and dominated by a small and insular group of individuals and entities.  Chief among them is AR Global, a privately held company whose affiliates exercise day-to-day control over GNL and RTL through two off-market advisory agreements that are financially tilted in favor of the AR Global affiliates, and are not in the best interest of stockholders of the Companies.

19.     AR Global's current CEO is Michael Weil, who previously was President of AR Capital.  In addition to his current role at AR Global, Mr. Weil sits on the Board of both RTL and

GNL.  He previously served as CEO of GNL and is now President and CEO of RTL.  Weil and his fellow managers and Board members who are entrenched with him have exercised effective control over all three of AR Global, GNL, and RTL, which led to GNL and RTL entering into costly long-term external management agreements with entities controlled by Mr. Weil and AR Global.  James Nelson, who is the current President and CEO of GNL, and a member of its Board, also holds a non-controlling interest in AR Global and/or its affiliated entities.

20.     Initially, the Blackwells Parties identified potential improvements in GNL's management and governance practices as an opportunity to unlock value in GNL's shares.  To that end, Jason Aintabi wrote to GNL's Board on September 16, 2022, to seek a dialogue regarding Blackwells' concerns with the Company's direction.

21.     Among Blackwells' concerns is the fact that the current Board of GNL has presided over negative returns for stockholders over the last five years.  During that time, GNL's stock has substantially underperformed both the MSCI U.S. REIT Index (a benchmark for publicly traded REITs), and the broader S&P 500 index.  GNL's stock trades at a significant discount compared to its peers in the market.

22.     GNL also suffers from poor corporate governance.  For example, GNL's Board recently approved a three-year extension of its so-called stockholder rights plan—also known as a poison pill—which effectively punishes stockholders who seek to purchase more than 4.9% of the GNL's stock.  As another example of its substandard governance practices, GNL's Board is split into separate classes, which has the effect of entrenching incumbent directors for multiple years, and makes it more difficult for stockholders to enact change when needed.

23.     RTL is controlled by the same entangled entities and individuals as GNL, and suffers the same defects in management and corporate governance.  In particular, RTL has

underperformed financially, has a Board that is split into separate classes in the interest of frustrating shareholders who may seek to impose immediate change, and has agreed to a costly external management agreement with an AR Global affiliate.

24.    Most recently, RTL's Board amended its bylaws in a manner that, according to RTL, precludes the nomination of any directors for election at the 2023 Annual Meeting who are not hand-picked by their advisor, *i.e.*, by Mr. Weil and his fellow Board members who are his cohorts.

25.    It is the Companies' enactment and misinterpretation of that bylaw amendment that has led to the instant litigation.

### Blackwells Nominates New Directors to Serve on the Boards of GNL and RTL

26.    After receiving no constructive engagement from the GNL Board, Blackwells Onshore sent Nomination Notices to both RTL and GNL on October 24, 2022, explaining that Blackwells Onshore was nominating Jim Lozier and Richard O'Toole to serve on each Board, and was submitting six business proposals for consideration at the Companies' respective 2023 Annual Meetings.   These letters identified Blackwells Onshore, Blackwells Capital, Mr. Aintabi, Mr. Lozier, Mr. O'Toole, and Related, as the participants in the anticipated proxy solicitation.

27.    At RTL, Mr. Weil and Lisa Kabnick are current Class III directors whose terms will end at the 2023 Annual Meeting.  Blackwells Onshore's Nomination Notice to RTL gave notice of its intent to nominate Messrs. Lozier and O'Toole to be elected to the Board as Class III directors, posing a threat to the continued Board service of Mr. Weil—who leads AR Global.

28.    In both Nomination Notices, Blackwells also gave notice of six business proposals for consideration at the 2023 Annual Meeting: (i) repeal a recent amendment to the Companies' bylaws which the Companies misinterpret to mean that director nominees must be designated as

"independent" or "managing" directors; (ii) terminate any poison pill currently in effect; (iii) declassify the Boards, (iv) require the resignation of any director who, in an uncontested election, fails to receive the affirmative vote of a majority of the voting power of the Company's outstanding capital stock; (v) designate a Strategic Review Committee of the Board to explore possible transactions, including a potential sale of each Company; and (vi) allow stockholders the ability to amend the Companies' bylaws.

29.     Blackwells' Nomination Notices were timely, and fully complied with all notice and disclosure requirements specified in the Companies' respective corporate bylaws, and all applicable laws.  Each Nomination Notice, including exhibits, exceeded 100 pages, providing all necessary details about the nominees, the affiliates of the nominating stockholder, and other disclosures.

### The Companies Reject the Nomination Notices Based on Spurious Arguments About their Bylaws and Purported Disclosure Deficiencies

30.     On December 2, 2022, RTL and GNL each responded by letter (the "Rejection Letters"), entirely rejecting Blackwells' nomination proposal and business proposals, citing two baseless arguments.  First, the Companies claimed that Blackwells' nominees do not meet purported director qualification requirements based upon recently enacted amendments to each of the Companies' bylaws.  Second, the Companies argued that the Nomination Notices contain "certain material omissions and deficiencies" related to the relationship between Blackwells and Related, one of the named Participants in the solicitation.  Both arguments are meritless.

31.     The bylaw amendment at issue was adopted by the respective Boards on July 18, 2022, in substantially identical form.  Two other REITs managed by affiliates of AR Global— New York City REIT, Inc. and Healthcare Trust, Inc.—also passed substantially identical bylaw amendments at the same time.  The amendments were adopted in the wake of a proxy contest at

New York City REIT, and after two consecutive annual meetings at which every director nominee put forward by GNL and RTL received an overwhelming number of "against" or "withhold" votes, and every director nominee failed to win majority support from shareholders.  Those nominees were nevertheless seated as directors due to plurality voting rules in effect at the Companies.

32.     The bylaw amendments established that a majority of the Board may increase or decrease the number of directors at each Company, with a ceiling of fifteen.  The amendments also added new language about the possibility of so-called "managing directors" serving on the Board of each Company.  The RTL bylaw amendment provided as follows in that regard:

> At any time that the number of directors comprising the board is five or more, **_up to_ two directors shall be managing directors**; provided, however, that if only one managing director is identified by the Corporation's advisor (currently Necessity Retail Advisors, LLC) (the "Advisor"), the board will include one managing director. If at any time the board of directors does not include the number of managing directors required under this section, the board of directors shall take all action necessary to cure such condition. To qualify for nomination or election as a director, an individual at the time of nomination and election shall meet the qualifications of an independent director or a managing director, as the case may be, depending on the position for which such individual may be nominated or elected. […] *A "managing director" shall mean an individual identified by the Advisor or, in the absence of such identification, the individual then serving as the Chief Executive Officer of the Corporation shall constitute a managing director.*

(Emphasis added.)

33.     The simultaneous amendment to the GNL Bylaws includes identical language, except that GNL's external advisor is identified as being Global Net Lease Advisors LLC.  Both GNL's advisor and RTL's advisor are controlled by AR Global (each, an "AR Global Advisor"). The full text of the relevant amended bylaw of RTL is attached to this Answer and Counterclaim as Exhibit A.

14

34.    The term "managing director," which features prominently in the newly amended bylaws, was not defined, and does not appear elsewhere in the bylaws or corporate charter of either Company.  The bylaws do not specify any powers or duties of a so-called "managing director."

35.    Nevertheless, in rejecting the Nomination Notices, the Companies contended that (i) each Board must contain *at least* one or two "managing directors," depending on the Board's size, and (ii) Blackwells' nominees cannot stand for election to the 2023 Annual Meetings because they have not been designated as "managing directors" by the relevant AR Global Advisor.  GNL, for example, asserted that because incumbent directors Messrs. Weil and Nelson have both been designated as managing directors by GNL, the new bylaw amendment effectively means that they are the only individuals who can be nominated and re-elected at GNL's 2023 Annual Meeting.  In other words, the fix is in, and GNL openly admits it.

36.    According to GNL, since both Messrs. Weil and Nelson have allegedly been designated as managing directors, any individual nominated to replace them can "qualify for nomination and election" only if the individual is "identified by the Advisor as a managing director or, in the absence of such identification," is "the Chief Executive Officer of the Company."  This baseless interpretation would mean that GNL's AR Global Advisor, led by Mr. Weil, would exercise sole and exclusive control over all director nominations at the 2023 Annual Meeting.  But that is not how corporate governance works.  Shareholders, not external managers, are entitled to pick a corporation's directors.

37.    RTL makes essentially the same argument as GNL.  RTL asserts that AR Global's CEO Mr. Weil, whose term on RTL's Board will expire at the 2023 Annual Meeting, is a designated "managing director," and that Blackwells' nominees are ineligible for nomination or election because they have not been so designated by the AR Global Advisor that manages RTL.

38.     Thus, both Companies contend that the external AR Global Advisors, led by Mr. Weil, have full control over who can fill Board positions at the Companies' 2023 Annual Meetings. Yet the Companies never informed their shareholders or the Securities and Exchange Commission that they would adopt this plainly incorrect interpretation of their new "director qualification" bylaws.

39.     The Companies' interpretation is baseless, and their rejection of Blackwells' nominees is impermissible as a matter of law.  First, the bylaws do not require that either Company have any managing directors at all.  The relevant language in RTL's bylaws states only that the Board must have "up to" two managing directors, but since the RTL Board is constituted of five or more directors, the bylaws contain no minimum requirement.  Because Blackwells' nominees qualify as "independent directors," as defined by the bylaws, there is no bar to their nomination and election.

40.     Second, even if the bylaws of either Company do require a minimum number of managing directors, they conspicuously do not designate any particular Board slots as managing director seats, and do not include any requirement that an outgoing managing director's seat be filled by another managing director.  If Blackwells' nominees win election to the Boards as independent directors, and the Boards then believe that they have an insufficient number of managing directors, then the Boards, together with their AR Global Advisor, can simply choose which directors will be so designated after the election.  Indeed, the amended bylaws explicitly provide:  "If at any time the board of directors does not include the number of managing directors required under this section, the board of directors shall take all action necessary to cure such condition."

41.     Accordingly, it is entirely proper to nominate individuals as independent directors, whether or not they will replace a managing director.  It is up to the Boards, after the elections, to take whatever lawful action may be necessary to ensure that there is an appropriate number of managing directors on the Boards, whether by asking the AR Global Advisor to designate someone, or by expanding the number of seats on the Boards.  But the Companies' bylaws do not give the Boards a pre-emptive power to reject nominees due to a possible future deficiency in the number of managing directors, particularly where the Board is empowered to cure any such hypothetical deficiency with the stroke of a pen.

42.     Third, if the Companies' interpretation of their amended bylaws were correct, which they are not, then the recent amendments would be void and unenforceable, because they would impermissibly strip stockholders of their fundamental nomination and voting rights under Maryland law.

43.     Under the Companies' interpretation, the only conceivable purpose of the bylaw amendment is to ensure that some directors must be hand-picked by the AR Global Advisor, in order to stymie any stockholder efforts at refreshing the Board in at least one election cycle. Indeed, the term "managing director" does not appear anywhere else in the bylaws; it is a label without power or consequence, except insofar as it protects the entrenched members of the Boards.

44.     The Companies' application of the bylaws would thus violate the Section 2-404 of the Maryland Code (Corporations and Associations), which codifies stockholders' fundamental right to elect directors at annual meetings.

45.     Although one of the two RTL directors whose term expires at the 2023 Annual Meeting is purportedly an independent director rather than a so-called "managing director," RTL maintains that Blackwells' nominees are both ineligible as independent directors, too, because

Blackwells' Nomination Notice "failed to identify, as required by the Bylaws, which of the Blackwells Nominees is being nominated for election to the . . . independent director position." This contention is meritless, and the rejection of Blackwells' nominees to the RTL Board is also improper.

46.     Leaving aside that the Companies' bylaws do not designate any positions as independent director or managing director seats, the bylaws also include no requirement that a nominating stockholder identify whether a nominee is intended to be an independent director or a managing director.  The nominees must merely be qualified, which they are.

47.     In the alternative, if RTL's interpretation of the bylaws is correct, then the new bylaw provision is void and unenforceable, because it would impermissibly prevent shareholders from exercising their voting rights in violation of Section 2-204 of the Maryland Code (Corporations and Associations).

### The Companies' Contention that the Nomination<br>Notices Did Not Disclose Enough Information Is Meritless

48.     In their Rejection Letters, the Companies also reject Blackwells Onshore's nominees and business proposals due to purported failures to comply with certain disclosure requirements under the "advance notice" provision of RTL's and GNL's bylaws.  The Companies make identical arguments in their respective Rejection Letters, which have no basis in fact or law.

49.     Specifically, the Rejection Letters claim that Blackwells' Nomination Notices failed to provide notice or any information about a purported "joint venture" between Blackwells and Related "with respect to replacing the [Companies'] external advisor with (or facilitated by) [Related] or one of its affiliates."  The Companies claim that during a November 7, 2022 meeting with representatives of GNL, Mr. Aintabi of Blackwells "made reference on several occasions to

a 'joint venture' between Blackwells and Related and a desire to have the Company conduct an external bid process to replace its external advisor and associated advisory agreement."

50.     After erecting this strawman, the Companies' Rejection Letters spend many paragraphs identifying requirements for the disclosure of this joint venture, if it existed.  But the purported joint venture described by the Companies in their Rejection Letters does not exist.  As was fully disclosed in the Nomination Notices, Blackwells and Related are cooperating with each other to solicit votes from the Companies' stockholders; they have no joint venture to do what the Rejection Letters described.  Thus, there was nothing omitted, meaning that the Companies have no basis to claim a material omission of notice or disclosure, and no basis for rejecting Blackwells' Nomination Notices on that basis.

**COUNT I**
**DECLARATORY JUDGMENT**
**(To Enforce RTL's Bylaws and Enjoin RTL's**
**Misinterpretation of the July 2022 Bylaw Amendment)**

51.     Blackwells Onshore and Jason Aintabi reallege the preceding paragraphs as if fully set forth here.

52.     RTL advances an erroneous interpretation of the July 18, 2022 amendment to its bylaws.

53.     RTL's misreading of the plain text of its bylaws unlawfully deprives Blackwells Onshore and Jason Aintabi and all other shareholders of their rights under the bylaws, and Maryland law, to nominate and vote for directors of their choosing at the 2023 Annual Meetings.

54.     Under RTL's misreading, RTL's outside advisors (AR Global affiliates) would have the sole and exclusive right to nominate candidates for open Board positions at the 2023 Annual Meeting.

55.     RTL also wrongfully relies on spurious disclosure demands, with no basis in fact or law.

56.     RTL's position creates an actual controversy as to the correct interpretation and application of the July 2022 amendment to the bylaws, and the notice requirements under the bylaws.

57.     The parties are currently soliciting votes from RTL shareholders in the lead-up to the 2023 Annual Meetings, and shareholder rights depend on an expeditious and just resolution to this controversy.

58.     Blackwells Onshore and Jason Aintabi are entitled to a declaration that the July 2022 bylaw amendments do not establish a minimum number of "managing directors" as defined therein, and/or that the amendments do not prevent Blackwells Onshore from nominating Messrs. Lozier and O'Toole for election to the Boards.

59.     Blackwells Onshore and Jason Aintabi are further entitled to a declaration that the notice requirements under the Companies' bylaws do not preclude Blackwells' nominees or business proposals, given that there is nothing further to be disclosed.

60.     A declaratory judgment by this Court will resolve and terminate this controversy, and usefully clarify the legal relations between the parties.

### COUNT II
### DECLARATORY JUDGMENT
### (To Enjoin RTL's Violations of Maryland
### Code, Corporations and Associations, § 2-404)

61.     Blackwells Onshore and Jason Aintabi reallege the preceding paragraphs as if fully set forth here.

62.     RTL's interpretation of the July 2022 bylaw amendment, and its rejection of Blackwells Onshore's nominees, would violate Blackwells Onshore's rights as stockholder to

nominate directors for election at the 2023 Annual Meeting, in violation of Section 2-204 of the Maryland Code (Corporations and Associations).

63.     RTL's position creates an actual controversy as to whether the bylaw amendment, if it has the meaning advanced by RTL, violates Maryland law protecting shareholders' rights to nominate and vote on directors.

64.     The parties are currently soliciting votes from RTL shareholders in the lead-up to the 2023 Annual Meeting, and shareholder rights depend on an expeditious and just resolution to this controversy.

65.     Blackwells Onshore and Jason Aintabi are entitled to a declaration that the July 2022 bylaw amendment is void and unenforceable as interpreted by the RTL, and enjoining RTL from rejecting Blackwells Onshore's nominations at the 2023 Annual Meeting or making any communication to stockholders that Blackwells Onshore's nominations are invalid.

66.     A declaratory judgment by this Court will resolve and terminate this controversy, and usefully clarify the legal relations between the parties.

**COUNT III**
**BREACH OF CONTRACT**
**(For Refusing to Recognize Blackwells' Nomination of Directors**
**for Election to the Companies' Boards, in Violation of Defendants' Bylaws)**

67.     Blackwells Onshore and Jason Aintabi reallege the preceding paragraphs as if fully set forth here.

68.     Article II, Section 11(a)(1) of RTL's bylaws sets forth stockholders' rights to nominate individuals for election to the Board and to make business proposals for consideration at annual stockholder meetings.

69.     Article II, Section 7 of the bylaws set forth stockholders' rights to vote on nominees and business proposals at annual stockholder meetings.

70.     Blackwells Onshore provided timely written notice of its intent to nominate two individuals to the Boards and to make six business proposals at RTL's 2023 Annual Meeting. Blackwells' Nomination Notices provided the notice and all information and disclosures required by RTL's bylaws.

71.     Based on its misreading of the July 2022 amendment to the bylaws, RTL is blocking Blackwells from nominating candidates for the Board, and, unless ordered otherwise, will refuse to count any proxies or votes cast in favor of Blackwells' nominees.

72.     RTL additionally rejected Blackwells' nominees and business proposals based on a spurious claim that Blackwells' Nomination Notices did not provide sufficient information on a purported joint venture between Blackwells and Related.  No such joint venture exists.

73.     By purporting to preclude Blackwells from exercising its rights to nominate directors, make business proposals, and vote on such nominations and proposals at RTL's 2023 Annual Meeting, the RTL has breached obligations owed to Blackwells, in its role as a stockholder, under RTL's bylaws.

74.     Blackwells has suffered damages as a result of RTL's breaches.

**COUNT IV**
**VIOLATION OF MD. CODE (CORPORATIONS AND ASSOCIATIONS) § 2-404**
**(For Precluding Plaintiff From Exercising Its Stockholder Voting Rights)**

75.     Blackwells Onshore and Jason Aintabi reallege the preceding paragraphs as if fully set forth here.

76.     RTL advances an interpretation of Article III, Section 2 of its bylaws which would violate Blackwells' rights as stockholder to nominate candidates for election to the Board, and to have an election on those nominations take place at the 2023 Annual Meeting.

77.     Under RTL's position, only the AR Global Advisor may nominate candidates for the open Board positions.

78.     By rejecting Blackwells' director nominees, RTL has violated Blackwells' essential nomination and voting rights.

79.     Specifically, RTL's actions violate its duties under Section 2-204 of the Maryland Code (Corporations and Associations), because they prevent Blackwells from effectively voting for directors at an annual meeting.

## REQUEST FOR RELIEF

WHEREFORE, Blackwells Onshore and Jason Aintabi respectfully request the entry of judgment against RTL, and in favor of the Blackwells Parties, follows:

(1)     Dismissing RTL's Complaint, and all claims made therein, with prejudice;

(2)     Declaring that RTL has breached its bylaws by attempting to prevent Blackwells from nominating directors for election at the 2023 Annual Meeting, or, in the alternative, that the July 2022 bylaw amendment violates Section 2-204 of the Maryland Code (Corporations and Associations), and is therefore void and unenforceable;

(3)     Enjoining RTL from taking any steps to interfere with the Blackwells Parties' nomination of candidates for election as directors based on the July 2022 bylaw amendment, or on any alleged lack of disclosure of the relationship between the Blackwells Parties and Related;

(4)     Ordering that RTL must count votes cast in favor of any of Blackwells' nominees at the 2023 Annual Meeting;

(5)     Awarding Blackwells Onshore and Jason Aintabi money damages in an amount to be proven at trial;

(6)     Granting Blackwells Onshore and Jason Aintabi their reasonable costs, expenses, and attorneys' fees; and

(7)     Awarding Blackwells Onshore and Jason Aintabi such other, further, and different relief as the Court deems just and proper.

Dated:  January 18, 2023                    Respectfully submitted,
New York, New York


                                            By:    /s/ Christopher E. Duffy
                                                   Christopher E. Duffy
                                                   VINSON & ELKINS LLP
                                                   1114 Avenue of the Americas, 32nd Floor
                                                   New York, NY 10036
                                                   Telephone: (212) 237-0000
                                                   Fax: (212) 237-0100
                                                   Email: cduffy@velaw.com

                                                   *Attorneys for Defendants Blackwells Capital
                                                   LLC, Blackwells Onshore I LLC, and Jason
                                                   Aintabi*